UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO CANELA,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>KATHLEEN ALLISON, Secretary,<br><br>　　　　　　　　　　Respondent. | Case No.:  19cv1434-GPC (MSB)<br><br>**REPORT AND RECOMMENDATION RE: MOTION FOR STAY [ECF NO. 57]** |

　　　This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.  Petitioner, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 10, 2019, raising the single, exhausted claim that the trial court violated his federal constitutional rights when it revoked his right to self-representation just prior to the start of trial.  (ECF No. 1 at 2, 6-8.)  Respondent answered on October 10, 2019.  (ECF No. 13.)  Petitioner requested thirteen extensions of the deadline to file his traverse, which the Court granted, continuing the deadline from November 27, 2019, to April 6, 2022.  (See ECF Nos. 9, 15-16, 18, 21-37, 38-43, 46, 52, 54.)  Plaintiff has not filed a traverse.  (See docket.)

///

Nearly three years after filing his federal petition, on April 5, 2022, Petitioner constructively filed a "Motion for Stay and Abeyance to Exhaust Unexhausted Claims." (ECF No. 57.) Pursuant to Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003), he asked the Court to stay this case while he exhausts new ineffective assistance of counsel and prosecutorial misconduct claims in state court. (Id.) Respondent opposed the stay motion on April 29, 2022. (ECF No. 60.) Petitioner constructively filed his reply, entitled "Petitioner's Response to Respondent's Opposition Motion for Petitioner's Motion for Stay and Abeyance" on May 25, 2022. (ECF No. 63.) The Court has considered the motion to stay, opposition, reply, and the complete record. For the reasons set forth below, the Court **RECOMMENDS** that Petitioner's motion be **DENIED.**

## I.     RELEVANT BACKGROUND

Petitioner was convicted by a jury of numerous criminal offenses, including premeditated attempted murder of a police officer and several drug and firearm-related offenses. (See ECF No. 14-38 at 396-400.) Petitioner was initially charged on October 20, 2013. (ECF No. 14-37 at 13.) Petitioner was represented by counsel until the Court granted his motion for self-representation on June 5, 2015. (See ECF No. 14-38 at 148-82.) The Court revoked Petitioner's self-represented status and appointed counsel from the Multiple Conflict Office on January 5, 2016. (ECF No. 14-38 at 191.) Petitioner's case was tried to a jury beginning on May 5, 2016, and ending on June 2, 2016, when the jury returned guilty verdicts. (Id. at 198-237.) The trial court sentenced Petitioner to fourteen years plus forty years to life on June 22, 2016. (Id. at 254-57.)

Petitioner filed his Petition for Writ of Habeas Corpus in this Court on July 10, 2019[1], raising a single claim that the trial court "denied [him] a fundamental

---

[1] Under the "mailbox rule," a pro se prisoner's filing of a state or federal habeas petition is deemed filed when the prisoner delivers it to prison authorities for forwarding to the clerk of the court. See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003); Miles v. Prunty, 187 F.3d 1104, 1106 n.2 (9th Cir. 1999). The Court here uses Petitioner's signature date of July 10, 2019, when both Petitioner signed his Petition and Correctional Office C. Bradford signed the outside of the legal mail envelope containing the Petition. (See ECF No. 1 at 11, 13.)

constitutional right when [it] erred in revoking his right to self-representation just prior to the start of trial." (ECF No. 1 at 6.) He had previously raised this claim by direct appeal, and the California Supreme Court denied review almost one year and ninety days prior, on April 11, 2018. (ECF No. 49.) Respondent answered the federal Petition on October 10, 2019, and filed a 3900-page Notice of Lodgment and Lodgment in support thereof. (ECF Nos. 13, 14.)

Between January 2020 and November of 2021 resolution of this case was delayed when the Court granted Petitioner's numerous motions to continue his deadline to file a traverse. (See ECF Nos. 16, 21, 23, 25, 27, 29, 31, 33, 40, 42, 46.) Reasons for the various continuances included Petitioner's lack of legal training; limited, intermittent access to the law library and telephone; pending requests to the superior court for transcripts and other discovery; and primarily, restrictions on prisoner movement and interruptions to law library access due to the COVID-19 pandemic. (See ECF Nos. 15, 18, 22, 24, 26, 28, 30, 32, 37, 39, 41, 43.) On November 12, 2021, Petitioner filed a motion for discovery and transcripts, asking this Court to order others to provide him with three items/categories of documents. (ECF No. 49.) In an abundance of caution, the Court granted a very limited amount of discovery that could potentially be relevant the Faretta claim before the Court, and extended Petitioner's traverse deadline to permit him to review the same. (See ECF Nos. 51, 54.) Most recently, the traverse was due on April 6, 2022. (ECF No. 54 at 2.)

On April 5, 2022,[2] Petitioner filed the instant Motion for a Stay and Abeyance, indicating for the first time that he wishes to bring additional claims of ineffective assistance of trial counsel and prosecutorial misconduct. (ECF No. 47 at 1, 6.) He specifically claims that trial counsel failed to "conduct a reasonable investigation, hire

---

[2] The Court again applies the mailbox rule. (See supra, n.1.) The Court finds Plaintiff's signature date on both the motion and the proof of service establish a constructive filing date of April 5, 2022. (See ECF No. 47 at 6-8); see also Smith v. Duncan, 297 F.3d 809, 815 (9th Cir. 2002) (using proof of service to determine the filing date of a state habeas petition under the mailbox rule), abrogated on other grounds by Pace v. DiGuglielmo, 544 U.S. 408 (2005).

experts, . . . call witnesses, [properly object] to unwarranted presentation of evidence and charges. . . . [and] present corroborating evidence and facts." (Id. at 6.) He claims that the prosecutor knowingly used perjured testimony, withheld evidence by redacting discovery, tampered with evidence and "placed extra burdens on Petitioner with unfound[ed] charges, enhancements and evidence." (Id.) Respondent urges the Court to deny Petitioner's stay motion, because his two claims "are untimely as they do not relate back to the original timely claim in the pending Petition in which Canela challenges the trial court's denial of his motion to represent himself at trial." (ECF No. 60 at 2.) In reply, Petitioner appears to argue that his new ineffective assistance of counsel and prosecutorial misconduct claims relate back to his timely Faretta claim because had the trial court permitted him to continue representing himself, he would not have a basis for the other two claims.[3] (See ECF No. 63 at 2 ("[H]ad Petitioner's Faretta rights . . . not been terminated, Petitioner would have presented to the trial court and jury all relevant information and facts being brought before the present court. . . . Also information that was being withheld by the prosecution . . . .").)

## II. DISCUSSION

### A. Legal Standard

A federal court may not address a petition for habeas corpus unless the petitioner has exhausted state remedies with respect to each claim raised. See 28 U.S.C. § 2254(b)(1)(A); Rose v. Lundy, 455 U.S. 509, 515 (1982). Generally, to satisfy the

---

[3] The Court notes Petitioner's representation that lack of access to the law library rendered him unable to conduct any legal research in support of his reply. (ECF No. 63 at 1.) Petitioner specifically describes a lockdown that lasted from May 6 to May 19, 2022, and submits an "Inmate Request for Interview," which demonstrates that he was also denied access to the law library due to a staff shortage on May 25 and 26, 2022. (Id. at 1-2, 5.) However, the Court also notes that Petitioner did not request additional time to permit him to perform legal research, and instead indicated he would "respond as best as one can." (Id. at 2.) Based on the foregoing, the Court does not understand Petitioner to be requesting additional time. The Court remains mindful of its obligations to liberally construe Petitioner's filings and independently review the record. Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006) (citing Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir.2005)); Knaubert v. Goldsmith, 791 F.2d 722, 729 (9th Cir. 1986) (internal citations omitted).

exhaustion requirement, a petitioner must "'fairly present[ ]' his federal claim to the highest state court with jurisdiction to consider it," or "demonstrate[ ] that no state remedy remains available." Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996) (citing Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 275 (1971)).

Pursuant to the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), all federal habeas petitions are subject to a one-year statute of limitations, and claims not exhausted and presented to the federal court within the one-year period are forfeited. 28 U.S.C. § 2244(d). A district court may not consider a "mixed" federal habeas petition–a petition containing both exhausted and unexhausted claims. Rose, 455 U.S. at 522.

A petitioner may move to stay this federal proceeding while he returns to state court to exhaust his unexhausted claims. See Jackson v. Roe, 425 F.3d 654, 659-60 (9th Cir. 2005); Valerio v. Crawford, 306 F.3d. 742, 770-71 (9th Cir. 2002) (en banc). The two procedures used to stay a federal habeas case in such circumstnaces are the "stay and abeyance" and "withdrawal and abeyance" procedures.

Under the "stay and abeyance" procedure, a district court has discretion to stay a "mixed" federal habeas petition, while the petitioner returns to state court to exhaust the unexhausted claims without losing his right to federal habeas review due to the relevant one-year statute of limitations. Rhines, 544 U.S. at 273-78. Once the petitioner exhausts the state court remedies for all his claims, the district court lifts the stay and allows the petitioner to proceed in federal court on all claims. See id. at 277. The "stay and abeyance" procedure is available only in "limited circumstances" when the following three conditions are met: (1) the petitioner demonstrates "good cause" for failing to first exhaust his claims in state court; (2) the unexhausted claims potentially have merit; and (3) there is no indication that petitioner intentionally engaged in dilatory litigation tactics. Id. at 277-78; see also Mitchell v. Valenzuela, 791 F.3d 1166, 1171 (9th Cir. 2015) (same). The procedure allows petitioner's "mixed" petition to

remain in federal court during the pendency of the state courts' collateral review of the petitioner's claims. See Rhines, 544 U.S. at 277.

Alternatively, a "mixed" federal petition may be stayed pursuant to "withdrawal and abeyance" procedure outlined in Kelly v. Small, 315 F.3d 1063, 1070-71 (9th Cir. 2003), overruled on other grounds by Robbins v. Carey, 481 F.3d 1143, 1149 (9th Cir. 2007). A Kelly abeyance requires compliance with the following three-step procedure: (1) petitioner files an amended petition deleting his unexhausted claims; (2) the district court "stays and holds in abeyance the amended, fully exhausted petition, allowing petitioner the opportunity to proceed to state court to exhaust the deleted claims"; and (3) petitioner subsequently seeks to amend the federal habeas petition to reattach "the newly-exhausted claims to the original petition." King v. Ryan, 564 F.3d 1133, 1135 (9th Cir. 2009) (citing Kelly, 315 F.3d at 1070-71). A stay under Kelly does not toll AEDPA's limitations period with respect to unexhausted claims. King, 564 F.3d at 1140-42. The petitioner is allowed to amend his newly-exhausted claims back into his federal petition only if the claims are timely under the AEDPA or "relate back" to the exhausted claims in the pending federal petition. Id. at 1140-41, see also Mayle v. Felix, 545 U.S. 644, 662-64 (2005). A new claim relates back to an existing claim if the two claims share a "common core of operative facts." Mayle, 545 U.S. at 664. "[A] Kelly stay will be denied when the court finds such a stay would be futile." Knowles v. Muniz, 228 F. Supp. 3d 1009, 1016 (C.D. Cal. 2017) (internal citation omitted).

**B.     Analysis**

Despite his use of the "stay and abeyance" language, Petitioner asks that the District Court enter a "Kelly stay," so that he may return to state court to exhaust claims of ineffective assistance of trial counsel and prosecutorial misconduct. (ECF No. 57 at 5-6.) He specifically cites to Kelly as the basis of his motion and articulates the Kelly standard and procedure. (See id.) Additionally, his petition includes only one exhausted claim, and he has not sought to amend his complaint to add his unexhausted ineffective assistance of counsel and prosecutorial misconduct claims. (See ECF No. 1; docket.)

1  Because he does not have a mixed petition, the Rhines analysis in inapplicable.  See
2  Patton v. Beard, No. 14-CV-569-BEN (BLM), 2015 WL 1812811, at *4 (S.D. Cal April 20,
3  2015) ("The Court notes that because Petitioner's Petition contains only exhausted
4  claims, it is not a mixed petition, and thus Rhines is inapplicable.") (citations omitted).
5         Although Petitioner's case is somewhat different from a typical petitioner bringing
6  a Kelly stay motion, many Courts have analogized similarly situated petitioners to those
7  who have already completed step one of the Kelly withdrawal and abeyance process.
8  See Haskins v. Schriro, No. CV 05-3252-PHX-MHM (JM), 2009 WL 3241836, at *7 (D. Ariz.
9  Sept. 30, 2009) ("This Court acknowledges that Petitioner did not start on the same
10 procedural ground as the normal Kelly petitioner; with a mixed petition.  Petitioner is,
11 however, in the same procedural posture as any Kelly-petitioner that has taken step-
12 one; he possesses a fully exhausted habeas claim and prays that the Court grant a stay.
13 Accordingly, the Court believes the rules governing Kelly apply in the instant case."); see
14 also, e.g., Patton, 2015 WL 1812811, at *6 (applying Kelly to the petitioner's request to
15 stay a fully exhausted petition so that he could exhaust new claims), Taylor v. Gonzalez,
16 Civil No. 11cv1109 WQH (RBB), 2012 WL 3648141, at *4 (S.D. Cal. June 28, 2012) (same
17 and collecting cases).
18        Respondent argues that under Kelly, Petitioner should not be permitted to stay
19 his federal petition because the two claims he seeks to exhaust are already untimely and
20 do not relate back to the Faretta claim in Petitioner's original petition.  (ECF No. 60 at 3-
21 4.)  Respondent is correct that because a petitioner will only be allowed to amend a
22 complaint to add a newly exhausted claim at step three of the Kelly procedure if the
23 claim is either independently timely or relates back to a timely claim, a petitioner will
24 only be entitled to a Kelly stay if his unexhausted claims meet that standard.  McCreary
25 v. Spearman, Case No.: 18-cv-00789-CAB-BGS, 2018 WL 6567881, at *4 ("Critically,
26 because a Kelly stay does not toll AEDPA's one-year statutory deadline, an untimely
27 petitioner is precluded from such a stay unless he is entitled to statutory or equitable
28 tolling or if Petitioner's unexhausted claims 'relate back' to his exhausted claims.");

Taylor, 2012 WL 3648141, at *5 (finding under Kelly, that petitioner "will only be entitled to a stay of his fully exhausted Petition if his new . . . claim is not otherwise time-barred by AEDPA"); Hughes v. Walker, No. 2:10-cv-3024 WBS TJB, 2012 WL 346449, at *5 (E.D. Cal. Feb. 1, 2012) ("Petitioner's new claims must [] either 'relate back' to original claims raised in the federal habeas petition for a Kelly stay to be warranted or must be independently timely under AEDPA."). Therefore, Petitioner is only entitled to a Kelly stay if his unexhausted claims are timely under AEDPA, either independently or by relation back.

**1.      Petitioner's unexhausted claims are untimely under AEDPA.**

The one-year AEDPA statute of limitations begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The California Supreme Court denied Petitioner's Petition for Review on April 11, 2018, and Petitioner's judgment became final for purposes of AEDPA ninety days later, on July 10, 2018. (See ECF No. 14-49); Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (limitations period does not begin to run until after expiration of ninety-day period for seeking certiorari). Accordingly, the AEDPA statute of limitations in this case began to run on July 11, 2018, the day after Petitioner's conviction became final, and expired one year later, on July 11, 2019. See 28 U.S.C. § 2244(d)(1)(A); Corjasso v.

Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (the one-year AEDPA statute of limitations begins to run the day after the conviction becomes final).  Petitioner constructively filed his habeas petition in federal court on July 10, 2019[4], the day before the statute ran. (ECF No. 1.)  Because Petitioner filed his Petition before the AEDPA deadline had passed, the Faretta claim therein is timely.  However, the new claims that Petitioner seeks to exhaust before adding them to an amended petition are not timely unless Petitioner is entitled to either statutory or equitable tolling.

AEDPA's statutory tolling provision suspends the one-year statute of limitation period while "a properly filed application for State post-conviction or other collateral review" is pending in state court.  28 U.S.C. § 2244(d)(2).  Thus, "the time when a qualifying [state habeas] application is pending shall not be counted toward a period of limitation."  Id.  At the time that Petitioner signed his federal habeas petition, the day before the AEDPA statute of limitations expired, Petitioner indicated in his Petition that he had not "previously filed any habeas petitions in any state court with respect to this judgment of conviction." (ECF No. 1 at 4.)  Petitioner does not indicate, either in the present stay motion or his reply, that he has filed any state habeas petitions addressing the claims he now seeks a stay to exhaust. (ECF Nos. 57, 63.)  Instead, Petitioner appears to now be asking for a stay so that he might file a state habeas petition in the first instance.  Considering that Petitioner claims his delay is related to "the [recent] humanitarian COVID-19 crisis and state wide lockdowns," that interfered with his law library access, it is untenable that he filed a state habeas petition raising his unexhausted ineffective assistance of counsel and prosecutorial misconduct claims before the AEDPA deadline passed on July 11, 2019, the day after he filed his federal

---

[4] Under the "mailbox rule," a pro se prisoner's filing of a state or federal habeas petition is deemed filed when the prisoner delivers it to prison authorities for forwarding to the clerk of the court.  See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003); Miles v. Prunty, 187 F.3d 1104, 1106 n.2 (9th Cir. 1999).  The Court here uses Petitioner's signature date of July 10, 2019, when both Petitioner signed his Petition and Correctional Office C. Bradford signed the outside of the legal mail envelope containing the Petition.  (See ECF No. 1 at 11, 13.)

petition and months before the COVID-19 pandemic began to impact California's prisons.  (See id. at 2); see also, e.g., Coleman v. Newsom, 455 F. Supp. 3d 926, 931 (E.D. Cal. 2020) ("Although the current record is unclear as to when [state officials] began planning a response to COVID-19, they started implementing preventive measures [in California prisons] at least as of March 11, 2020, when normal visiting at CDCR institutions was canceled statewide, fact sheets and posters on the pandemic were delivered to the inmate population, and additional hand-sanitizing dispenser stations were ordered.")  Petitioner's timely federal habeas petition did not statutorily toll the AEDPA deadline.  Duncan v. Walker, 533 U.S. 167, 181-82 (2001) ("[A]n application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2).")  Therefore, Petitioner is not entitled to any statutory tolling.

In addition to statutory tolling, AEDPA's one-year statute of limitations may be subject to equitable tolling in appropriate circumstances.  Holland v. Florida, 560 U.S. 631, 645 (2010).  However, the threshold to trigger equitable tolling is high, and therefore it is not available in most cases.  Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010).  To be entitled to equitable tolling, a habeas petitioner has the burden of establishing two elements:  (1) "he has been pursuing his rights diligently," and (2) "some extraordinary circumstance stood in his way."  Holland, 560 U.S. at 649 (citing Pace, 544 U.S. at 418); see also Gibbs v. Legrand, 767 F.3d 879, 884 (9th Cir. 2014) (same).  The failure to file a timely petition must be the result of external forces, not the result of the petitioner's lack of diligence.  Miles, 187 F.3d at 1107.  A petitioner must establish that the extraordinary circumstances caused the failure to timely file.  See Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005), reh'g granted, opinion modified on unrelated grounds, 447 F.3d 1165 (9th Cir. 2006).

As noted above, the only argument applicable to equitable tolling in Petitioner's motion is that "[d]ue to [recent] humanitarian COVID-19 crisis and statewide lockdowns, Petitioner hasn't had access [to] law library time or [the ability] to conduct any legal

research until [recently]." (ECF No. 57 at 2.) He argues more generally in his reply that being incarcerated makes it "difficult to conduct any proper research into ones [sic] appeal." (ECF No. 63 at 1.)

Addressing first Petitioner's claim that restrictions related to COVID-19 somehow prevented him from timely filing, the Court finds this argument lacks merit. Because Petitioner's AEDPA deadline of July 11, 2019 passed before COVID-19 began to impact California prisons as previously noted, this cannot be a basis for statutory tolling.

Next, the Court addresses Petitioner's generalized complaints about the challenges created by incarceration:

> [I]f it's not one thing[,] it's another with the prison's policies and procedures. From being transfered [sic] at any moment, to a humanitarian crisis like Covid-19, to incidents that cause cancelations and shutdowns of everything from law library time, education, self help programs, etc., etc.

(ECF No. 63 at 1.) Petitioner has provided no evidence that any specific limitations incident to his incarceration prevented him from filing his habeas petition during the relevant time period, from July 11, 2018, to July 11, 2019. Petitioner does not articulate any specific time(s) when some feature of his incarceration prevented him from progressing with his federal habeas petition. Generalized, non-specific claims such as Petitioner's "cannot establish that extraordinary circumstances prevented him from filing a federal habeas petition" due to a failure "to demonstrate with any specificity a connection between the alleged denial of access and his untimely petition." Quintero v. Haws, No. 07-CV-0579-H (POR), 2008 WL 553651, at *5 (S.D. Cal. Feb. 28, 2008) (finding petitioner was not entitled to equitable tolling based on non-specific allegations "that prison policies, lockdowns, and his job demands restricted his access to the law library"); see also Xayasomloth v. Cate, No. 08CV260 BEN (AJB), 2009 WL 514286, at *8 (S.D. Cal. Feb. 27, 2009) ("Because Petitioner does not document the exact duration of any lockdown or his attempts to access the law library, the Court cannot say that the library access restrictions were the but-for and proximate cause of Petitioner's untimeliness for

almost six months."). Awarding equitable tolling on claims as generic as Petitioner's "would essentially eviscerate equitable tolling because every prisoner would be entitled to make such claims." Storie v. Kramer, No. 1:06-cv-01796-AWI-TAG HC, 2009 WL 306705, at *7 (E.D. Cal. Feb. 6, 2009), report and recommendation adopted by 2009 WL 899970 (E.D. Cal. Mar. 31, 2009).

Further, the nature of the unexhausted claims articulated in the Petitioner's Motion to Stay suggests that he was aware of the facts that form the basis of these claims at the time of trial, and he was not diligent in pursuing them. Petitioner's ineffective assistance of counsel claim focuses on his trial counsel's "failing to conduct a reasonable investigation, hire experts, refusing to call on witnesses, [and] not properly objecting to unwarranted presentation of evidence and charges." (Id. at 6.) These are all things that Petitioner would have been aware of during his 2016 trial. In fact, Petitioner concedes this when he argues in his reply that he would have presented the facts that underly his unexhausted claims at trial if the trial court had not revoked his right to represent himself. (ECF No. 63 at 2.) Petitioner specifically explains that his trial counsel had the information underlying the claims he now seeks to raise, because he provided it to her. (Id. ("Information that trial counsel had it in her possession, was aware of from Petitioner and trial counsel still refused to investigate or present to court and jury whatsoever. Also information that was being withheld by the prosecution . . . .").) Despite his knowledge of these facts, he has waited nearly seven years to ask this Court for a stay so that he may attempt to raise these claims or the first time in state court.

The same is true regarding the prosecutorial misconduct claim, which appears to be based on materials taken from discovery and trial testimony. (See ECF No. 57-1 (Exhibits to Stay Motion); see also ECF No. 14-25 at 25 (the court and counsel discussing after the Court granted Petitioner pro per status, how "in order for [Petitioner] to get the cleanest possible discovery," the prosecutor would be reissuing all discovery to Petitioner).) In these circumstances, the Court cannot find that Petitioner diligently

pursued his rights. See Patton, 2015 WL 1812811, at *9 (finding Petitioner had not demonstrated diligence when he waited nearly four years to raise his claims based on events known at trial).

### 2. Petitioner's new claims do not relate back to his properly filed claim.

Though Petitioner's unexhausted claims are not independently timely, Petitioner could be permitted to amend if the new claims relate back to original, properly filed claim. Respondent contends, without much explanation, that the ineffective assistance of counsel and prosecutorial misconduct claims Petitioner seeks to exhaust do not relate back to his Faretta claim. (ECF No. 60 at 2, 3-4.) Though he does not invoke the "relation back doctrine" by name, Petitioner raises an argument that the Court construes as one for relation back—that the ineffective assistance and prosecutorial misconduct would not have occurred without the trial court's termination of his self-representation. He claims that "had Petitioner's[] Faretta rights . . . not been terminated, Petitioner would have presented to the trial court and jury all relevant information and facts being brought before the present court. . . . Also information that was being withheld by the prosecution . . . ." (ECF No. 63 at 2.)

In habeas cases, as in other civil cases, an amendment "relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); see also 28 U.S.C.A. § 2242 (a habeas petition may be amended "as provided in the rules of procedure applicable to civil action). Even when the claim is based on the same trial and conviction, it "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 650. Relation back requires claims to be "tied to a common core of operative facts." Id. at 664. "Mayle requires a comparison of a petitioner's new claims to the properly exhausted claims left pending in federal court." King, 564 F.3d at 1142. The Ninth Circuit has recently detailed the process for this analysis:

> We follow two steps to determine whether an amended petition relates back to an original petition that relied on an appended written instrument to help set forth the facts on which it based its claims. First, we determine what claims the amended petition alleges and what core facts underlie those claims. Second, for each claim in the amended petition, we look to the body of the original petition and its exhibits to see whether the original petition "set out" or "attempted to . . . set out" a corresponding factual episode, see Fed. R. Civ. P. 15(c)(1)(B)—or whether the claim is instead "supported by facts that differ in both time and type from those the original pleading set forth," [citation].

Ross v. Williams, 950 F.3d 1160, 1167 (9th Cir. 2020), cert. denied sub nom. Daniels v. Ross, 141 S. Ct. 840 (2020) (citing Mayle, 545 U.S. at 650, 664).

The facts underlying Petitioner's unexhausted claims of ineffective assistance of counsel and prosecutorial misconduct differ in both time and type from those supporting the timely Faretta claim in his original petition. Petitioner's ineffective assistance of counsel claim, by its very nature, involves the conduct of trial counsel when Petitioner was no longer permitted to represent himself. Petitioner alleges his trial counsel failed to "conduct a reasonable investigation [and] hire experts, refuse[d] to call on witnesses, [did] not properly object[] to unwarranted presentation of evidence and charges," and "refused to present corroborating evidence and facts." (ECF No. 57 at 6.) It also involves the substance of the case against him, insofar as Petitioner must show both deficient performance and prejudice therefrom. Strickland v. Washington, 466 U.S. 668, 686-87 (1984).

Petitioner's prosecutorial misconduct allegations, while not detailed by Petitioner, involve the prosecutor's actions (not those of Petitioner). Petitioner specifically alleges the prosecutor withheld alcohol analysis evidence, knowingly used perjured testimony, tampered with evidence, and placed unfounded burdens on Petitioner in a number of ways. (ECF No. 57 at 6.) These allegations involve details about the evidence provided to Petitioner and his lawyers in discovery, presented to the jury at trial, and the impact of the prosecutor's actions on the outcome of the case. See Banks v. Dretke, 540 U.S.

668, 691 (2004) (There are "three components or essential elements of a Brady prosecutorial misconduct claim: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'") (internal citation omitted); Dow v. Virga, 729 F.3d 1041, 1048 (9th Cir. 2013) ("[P]rosecutorial misconduct of the kind that occurred here violates the constitutional rights of the defendant and requires a reversal of the conviction if (1) the testimony was actually false, (2) the prosecutor knew it was false, and (3) the false testimony was material (i.e., there is a reasonable likelihood that the false testimony could have affected the judgment)."). In his stay motion, presumably to support his unexhausted claims, Petitioner details evidence related to the prosecutor's redaction of alcohol analysis evidence and alleged tampering with drug, taser, and firearm evidence (such as arguably inconsistent statements and evidence). (ECF No. 57 at 3-6.)

Petitioner's timely claim here pertains to the trial court's revocation of his pro per status. (See ECF No. 1.) Evaluation of this claim requires an examination of Petitioner's conduct as a self-represented litigant and whether the trial court properly found that he engaged in "serious and obstructionist misconduct." Faretta v. California, 422 U.S. 806, 834 n.46 (1975); see also ECF No. 1 at 7 (Petitioner arguing in his Complaint that "his convictions should be reversed because he was erroneously denied his fundamental constitutional right to self-representation when the trial court abused its discretion and revoked petitioner's pro per status just prior to the start of trial without a specific and adequate warning, without consideration of alternative sanctions, without sufficient showing that petitioner was disruptive or dilatory in a manner that threatened to subvert the core concept of a trial or to compromise the court's ability to conduct a fair trial, and without making adequate record as to how appellant's[sic] misconduct would seriously threaten core integrity of the trial"). Improper denial of self-representation is not amenable to harmless error analysis, and therefore it does not require Petitioner to show prejudice. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984). The relevant facts

to this claim lie in the record regarding what the trial court knew about Petitioner's conduct as a pro per defendant, and whether that justified the trial court's revocation of Petitioner's pro per status.  The facts underlying the substantive case against Petitioner have no bearing on his Faretta claim here, where the behavior that precipitated the trial court's revocation of Petitioner's pro per status was primarily related to Petitioner's refusal to identify which of over 2,000 photographs in discovery he needed printed for trial, while insisting that if every photograph was not printed for him, he would ask for discovery in front of the jury.  (ECF No. 14-4 at 34-43, 66-80.)

To the extent that Petitioner argues a causal relationship between his exhausted claim and the two he seeks to exhaust, the Court notes that the applicable standard, discussed and applied above, asks whether there is a common core of operative facts, not whether one claim may have permitted an opportunity for another to arise. Further, other court decisions disprove this theory by finding no relation back where one alleged error made it possible for another to occur.  See, e.g., Medina v. People, Case No. CV 19-8153 JGB (PVC), 2020 WL 5217150, at *4-*5 (C.D. Cal Jul. 28, 2020) (finding that petitioner's two claims related to the sufficiency of the evidence related back to a timely poorly pled sufficiency of the evidence claim, while an excessive sentencing claim did not); Hughes, 2012 WL 346449, at *6 (finding new claim related to a bribed witness giving allegedly perjured testimony at the preliminary hearing did not relate back to exhausted claim that the admission of that testimony at trial violated the petitioner's right to confront witnesses against him).

The operative facts relevant to Petitioner's expansive, unexhausted claims vary dramatically from those relevant to Petitioner's narrow, exhausted claim.  Accordingly, this Court finds that the unexhausted claims do not relate back to the claim in Petitioner's original habeas petition and they are untimely under AEDPA.  See, e.g., Hebner v. McGrath, 543 F.3d 1133, 1138 (9th Cir. 2008) (finding the new claim did not relate back where "[the petitioner's] original claim related to the evidence admitted at trial, while his later claim was directed at the jury instructions given by the trial court");

McGrail v. Gamboa, Case No. CV 18-3642 JVS (PVC), 2022 WL 1511778, at *8 (C.D. Cal. Mar. 29, 2022) (holding that the petitioner's Marsden/Faretta claim and others did not relate back to timely ineffective assistance of counsel and Vienna Convention claims), report and recommendation adopted, 2022 WL 1261968 (C.D. Cal. Apr. 28, 2022); Haskins, 2009 WL 3241836, at *6 (finding Brady claim different in time and type from due process and IAC claims because "it implicates prosecutorial misconduct, whereas the original claims focus on the actions of trial counsel and the trial-court judge").

### III. CONCLUSION AND RECOMMENDATION

Because Petitioner's unexhausted claims are untimely under AEDPA and do not relate back to his timely claim, any attempt to amend to add these claims after Petitioner's proposed Kelly stay would be futile. **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; (2) **DENYING** Petitioner's motion to stay [ECF No. 57].

**IT IS ORDERED** that no later than **July 1, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 15, 2022**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated: June 17, 2022

Honorable Michael S. Berg
United States Magistrate Judge