UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO CANELA,<br><br>                    Petitioner,<br>v.<br><br>KATHLEEN ALLISON, Secretary,<br><br>                    Respondent. | Case No.: 19cv1434-GPC(MSB)<br><br>**ORDER DENYING PETITIONER'S MOTION FOR EXTENSION OF TIME TO FILE OBJECTIONS; ADOPTING MAGISTRATE JUDGE REPORT AND RECOMMENDATION; AND DENYING PETITIONER'S MOTION FOR STAY AND ABEYANCE**<br><br>**[ECF Nos. 57, 71]** |

      This case involves a habeas corpus petition filed by Petitioner Ignacio Canela ("Petitioner" or "Canela") on July 17, 2019 in the Central District of California. On July 30, 2019, after the case was transferred to the Southern District of California, it was referred to Magistrate Judge Michael S. Berg for all preliminary matters pursuant to Civil LR 72.1(d). ECF Nos. 5, 6. Before the Court is Petitioner's Motion for Stay and Abeyance to Exhaust Unexhausted Claims that was referred to Magistrate Judge Berg for preparation of a Report and Recommendation. ECF No. 57. On April 29, 2022, Respondent Kathleen Allison ("Respondent" or "Allison") filed a Response, (ECF No. 60), and on May 25, 2022, Petitioner filed a Reply, (ECF No. 63). Magistrate Judge

Michael S. Berg issued a Report and Recommendation. ECF No. 64. Objections were due on or before July 1, 2022. *Id.* Petitioner subsequently filed four Motions for Extension of Time to File Objections. *See* ECF Nos. 65, 67, 69, 71. Magistrate Judge Berg granted the first three. *See* ECF Nos. 66, 68, 70. Pending before this Court is the Magistrate Judge's Report and Recommendation on the Motion for Stay and Abeyance and the fourth motion for extension of time to file objections to the Magistrate Judge's Report.

For the reasons stated below, the Court **DENIES** Petitioner's fourth Motion for Extension of Time to File Objections, **ADOPTS** the Magistrate Judge's Report and Recommendation in full, and **DENIES** Petitioner's Motion for a Stay and Abeyance.

## BACKGROUND

On June 2, 2016, a jury found Petitioner guilty of various state criminal offenses, including attempted premeditated murder of a peace officer and several drug and firearm-related offenses. *See* ECF No. 14-38 at 114–16. Though initially represented by counsel, the state court granted Canela's motion for self-representation on June 5, 2015. ECF 14-45 at 18–19. On January 5, 2016, the court revoked Canela's self-representation status and reappointed counsel over Canela's objection. *Id.* at 30–35. Appointed counsel ultimately represented Canela at trial, where the jury found him guilty on almost all counts. *See* ECF 14-40 at 37, 6–9. Petitioner was sentenced to fourteen years plus forty years to life. *Id.* at 9.

Petitioner timely appealed, alleging that the state trial court violated his right to represent himself under *Faretta v. California*, 422 U.S. 806 (1975). ECF No. 14-40 at 23–24. On January 16, 2018, the California Fourth Appellate District affirmed Petitioner's conviction, and on April 11, 2018, the California Supreme Court denied review. ECF Nos. 14-45, 14-49.

On July 10, 2019, Canela filed in this Court a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 alleging that the state court violated his constitutional rights when it revoked his self-representation status. ECF No. 1. On October 10, 2019, Respondent filed an answer and a 3900-page lodgment of the state

court record. ECF No. 13, 14. Magistrate Judge Berg then granted Petitioner thirteen traverse deadline extensions, extending the deadline from November 27, 2019, to April 6, 2022. ECF No. 9, 15–16, 18, 21–33, 37–43, 46, 52, 54. Petitioner has yet to file a traverse.

On April 5, 2022, Petitioner filed the instant Motion for Stay and Abeyance to Exhaust Unexhausted Claims asking this Court to stay the Petition while he brings two additional state court claims: ineffective assistance of counsel and prosecutorial misconduct. ECF No. 57. On June 17, 2022, Magistrate Judge Michael S. Berg issued a Report and Recommendation recommending this Court deny Petitioner's pending Motion for Stay and Abeyance. ECF No. 64. Judge Berg granted Petitioner three extensions of time to file an objection to the Report. *See* ECF Nos. 66, 68, 70. On September 21, 2022, Petitioner requested an additional 90-day extension to file objections. ECF No. 71.

In view of the above procedural history, three issues are currently before the Court: (1) Petitioner's Motion for Stay and Abeyance; (2) Petitioner's request for additional time to file an objection to the Report; and (3) Petitioner's traverse.

## LEGAL STANDARD

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If objections are made, the Court reviews the magistrate judge's findings and recommendations *de novo*. 28 U.S.C. § 636(b)(1)(C). If no objection is filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974).

## DISCUSSION

**I.     Petitioner's Motion for Extension of Time to File Objection**

On June 17, 2022, Magistrate Judge Berg issued a Report and Recommendation and directed any party to file an objection "no later than July 1, 2022." ECF No. 64 at 17.

Petitioner then requested three different extensions, all of which the Court granted. *See* ECF Nos. 65–70. Petitioner's first request asked for a 30-day extension "in order to file his[] 'Objections To Report And Recommendation.'" ECF No. 65 at 1. Petitioner stated a general intent to file an objection, but he did not make any specific objection to any particular portion of the R&R. *Id.* The Court ultimately granted the first request for extension but advised Canela that:

> considering his extensive history of continuances and the age of this case, the Court will not grant further extensions of time without a more *particularized* showing than the one in his [first extension request]. If Petitioner seeks additional time in the future, he should indicate *what steps he has taken to complete any objections he wishes to file and precisely what he needs to complete and file the same.*

ECF No. 66 at 2 (emphasis added).

Petitioner's second request also asked for a 30-day extension "in order to file his 'Objections To Report And Recommendation'" on the grounds that he only had the opportunity to visit the law library two times for a total of four hours of research. ECF No. 67 at 1. However, Petitioner again failed to specify any *particularized* objection grounds and did not note *precisely* what he needed to research, as the Court made clear it would require for any additional extensions. ECF No. 68 at 2. The Court still partially granted the extension, giving Petitioner an additional 21 days, until August 22, 2022. *Id.*

Petitioner's third request concerned a substantial delay that would have precluded his ability issue an objection within the second extension's allotted time frame. *See* ECF No. 69. It appears there was a clerical error and Petitioner did not receive the Order granting an extension until August 25, 2022, which was after the new deadline had expired. ECF No. 70 at 2. Notably, Petitioner's third request again failed to explain which "issues he needs to conduct legal research on before he can determine whether or what objections to file." *Id.* However, the Court granted Petitioner's third extension request, finding the mail delay constituted good cause for an extension. *Id.*

Now before the Court is Petitioner's fourth deadline extension request. ECF No. 71. Canela requests an additional 90-day extension to "File Objection to Report and Objections." *Id.* at 1. In his request, Petitioner notes the logistical complications that prevent him from engaging in the amount of legal research he hopes to do, contending that the Court's "short deadlines are not going to work out." *Id.* However, by the time of this fourth request, Petitioner had three months to engage in legal research and three opportunities to make at least one specific objection to a portion of the Report. Petitioner did not raise any such objection in his first request, nor did he raise one in his second, third, or fourth requests—even after the Court repeatedly stated that he must do so to obtain another extension. *See* ECF Nos. 65–71. Notably, Petitioner had at least some access to the law library during that period, although not the priority access he hoped the library would grant.

Because Petitioner has failed to make a specific objection to any particular portion of the Report, the Court **DENIES** Petitioner's fourth request for an extension to file an objection. Consequently, neither party filed a timely objection to the Magistrate's Report and the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *See* 28 U.S.C. § 636(b)(1)(C).

## II. Motion for Stay and Abeyance

On April 5, 2022, one day before Petitioner's extended traverse deadline, Petitioner filed a Motion for Stay and Abeyance to Exhaust Unexhausted Claims, asking the Court to stay the federal proceeding while he brings two unexhausted claims in state court: ineffective assistance of counsel and prosecutorial misconduct. ECF No. 57.

### A. Legal Standards

State prisoners may only obtain federal habeas relief "after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A). This provides state courts the opportunity rule on petitioners' claims before a federal court steps in. *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (stating the doctrine of comity provides that "one court should defer action on causes properly

within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter"). Petitioners generally satisfy the exhaustion requirement once they have either (1) presented the claims to the highest state court with jurisdiction; or (2) demonstrated that "no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). District courts may not consider mixed habeas petitions—those that include both exhausted and unexhausted claims. *See Rose*, 455 U.S. at 515 (stating "federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act").

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") subjects federal habeas petitions to a one-year statute of limitations. 28 U.S.C. 2244(d). Claims not exhausted and presented to the federal court within the one-year period are time-barred. *Id.*

When faced with "mixed" habeas petitions—those involving both exhausted and unexhausted claims—there are two procedures through which courts can stay federal habeas proceedings while petitioners return to state court to exhaust unexhausted claims: (1) stay and abeyance; and (2) withdrawal and abeyance. *See Jackson v. Roe*, 425 F.3d 654, 659–60 (9th Cir. 2005) (stating "a district court has discretion to stay a mixed petition to allow a petitioner time to return to state court to present unexhausted claims"); *Kelly v. Small*, 315 F.3d 1063, 1070 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007).

Under the "stay and abeyance" procedure, the district court can stay a "mixed" federal habeas petition while the petitioner exhausts unexhausted claims in state court. *Rhines v. Weber*, 544 U.S. 269, 273 (2005). Once the petitioner exhausts the state court claims, the district court lifts the stay and allows the petitioner to proceed on all claims in federal court. *Id.* at 275–76. District courts should only grant a stay and abeyance in "limited circumstances" when: (1) the petitioner demonstrates "good cause" for failing to exhaust the claims in state court; (2) the claims are not "plainly meritless"; and (3) there

are no indications that the petitioner engaged in "abusive litigation tactics or intentional delay." *Id.* at 277–78; *see also Mitchell v. Valenzuela*, 791 F.3d 1166, 1171 (9th Cir. 2015).

Alternatively, under the "withdrawal and abeyance" procedure, also known as a "*Kelly* stay," there is a three-step procedure:

> (1) the petitioner must file an amended, non-"mixed" petition that deletes unexhausted claims and leaves only the exhausted claims;
>
> (2) the district court then "stays and holds in abeyance the amended, fully exhausted petition, allowing petitioner the opportunity to proceed to state court to exhaust the deleted claims"; and
>
> (3) the petitioner then amends the federal habeas petition by reattaching the "newly-exhausted claims."

*King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009).

A *Kelly* stay does not toll the AEDPA statute of limitations period for all claims. *Id.* at 1141–42. It only tolls properly exhausted claims. *Id.* Thus, the petitioner may only re-add the newly exhausted claims under step (3) above if they (a) are timely under the AEDPA statute of limitations; or (b) "relate back to claims properly contained in the original petition—that is, those claims that were exhausted at the time of filing." *Id.* New claims relate back to existing claims when they share "a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005); Fed. R. Civ. P. 15(c)(1).

### B.  Petitioner's Motion

Here, Canela initially articulated the "stay and abeyance" language but ultimately requested a *Kelly* stay and pleaded the *Kelly* legal standard. ECF No. 57 at 1, 5. Further, his initial petition was not mixed, as it only articulated one exhausted claim regarding his right to self-representation. ECF No. 1 at 6. Although a *Kelly* stay also ordinarily requires a mixed petition, Petitioner's procedural posture is akin to a party that has taken the first *Kelly* stay step. Other courts have similarly analogized. *See, e.g.*, *Taylor v. Gonzalez*, No.

11-CV-1109-WQH-RBB, 2012 WL 3648141 (S.D. Cal. June 28, 2012) (permitting a *Kelly* stay even when the petition was never mixed).

Thus, the Court finds a *Kelly* analysis is proper in this case. For the reasons discussed below, the Court **DENIES** Canela's motion for a *Kelly* stay because (a) the unexhausted claims are not timely and (b) the unexhausted claims do not relate back to the exhausted claim.

### 1. Petitioner's unexhausted claims are not timely.

Petitioner's new, unexhausted claims regarding ineffective assistance of counsel and prosecutorial misconduct are not timely. The AEDPA statute of limitations began to run on July 11, 2018, and more than one year has passed since that date. Further, neither of the two AEDPA tolling provisions—statutory tolling nor equitable tolling—apply in this case.

The one-year AEDPA limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Provision (A) governs the timing in this case. First, there was no state action impeding Petitioner's filing so (B) does not apply. Second, none of Petitioner's claims relate to newly recognized constitutional rights, so (C) does not apply.

Finally, Petitioner could have discovered, and in fact did discover, the factual predicate of all three of his claims during the 2016 trial, so (D) applies but does not govern because (A) represents the "latest" of the two. *Id.* Petitioner addressed his right to self-representation at the time of the 2016 trial, and concedes he also had the factual predicates for his ineffective assistance of counsel and prosecutorial discretion claims at that time. *See* ECF No. 63 at 2 (Canela stating that "had Petitioner's *Faretta* rights . . . to represent oneself not been terminated, Petitioner would have presented to the trial court and jury all relevant information and facts brought before the present court"). Section 2244(d)(1)(A) therefore controls.

The Court now determines the date upon which the "judgment became final." § 2244(d)(1). The California Supreme Court denied Canela's Petition for Review on April 11, 2018. ECF No. 49. Petitioner then had 90 days to seek a writ of certiorari from the United States Supreme Court. U.S. Sup. Ct. R. 13 ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). Canela did not seek a writ of certiorari and therefore the state conviction became final on July 10, 2018, 90 days after the California Supreme Court denied review. The one-year AEDPA statute of limitations then "began to run . . . the day after" Petitioner's conviction became final. *Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002); *see also* § 2244(d)(1)(A). The AEDPA statute of limitations therefore began to run on July 11, 2018, and expired one-year later, on July 11, 2019.

Assessing the timeliness of Petitioner's claims within the context of the July 11, 2019 statute of limitations expiration, Petitioner's *Faretta* right to self-representation claim was timely, but his ineffective assistance of counsel and prosecutorial misconduct claims were not timely. Canela constructively filed his *Faretta*-based right to self-representation claim on July 10, 2019—one day before the AEDPA statute of limitations expired. ECF No. 1; *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) ("Under

the 'mailbox rule,' a pro se prisoner's filing of a state habeas petition is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of the court.").

Conversely, Canela neither exhausted nor filed his ineffective assistance of counsel and prosecutorial abuse claims before the July 11, 2019 AEDPA deadline. Therefore, those claims are only timely if these claims can be subject to either (1) statutory tolling; or (2) equitable tolling.

Neither of the two claims are fairly subject to statutory tolling. AEDPA's statutory tolling provision suspends the one-year statute of limitation period while "a properly filed application for [s]tate post-conviction or other collateral review" is pending in state court. § 2244(d)(2). Here, there is nothing in the record that indicates Canela filed any claims in state court after the California Supreme Court denied review and therefore there is no "properly filed application" that could statutorily toll either claim. *Id.*

Second, neither of the two claims are saved by equitable tolling. To qualify for equitable tolling, a habeas petitioner must establish that (1) "he has been pursuing his rights diligently"; and (2) "'some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is highly fact dependent, decided on a case-by-case basis, and unavailable in most cases. *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010).

Petitioner makes two equitable tolling-related claims: (1) lack of legal research access due to COVID-19; and (2) complaints regarding the prison's policies and procedures. First, Petitioner asserts that the "humanitarian COVID-19 crisis" and corresponding statewide lockdowns precluded his "access to law library time" and ability to "conduct any legal research." ECF No. 57 at 2. However, the AEDPA statute of limitations expired on July 11, 2019—eight months before California prisons instituted COVID-19-related preventative measures. *See, e.g.*, *Coleman v. Newsom*, 455 F. Supp. 3d 926, 931 (E.D. Cal. 2020) ("Although the current record is unclear as to when

Defendants began planning a response to COVID-19, they started implementing preventive measures at least as of March 11, 2020, when normal visiting at CDCR institutions was canceled statewide, fact sheets and posters on the pandemic were delivered to the inmate population, and additional hand-sanitizing dispenser stations were ordered."). Because the AEDPA deadline passed months before COVID-19 impacted California prisons, COVID-19 lockdowns cannot serve as a basis for equitable tolling.

Second, Petitioner stated the following regarding his circumstances while in prison:

> Being incarcerated has been very difficult to conduct any proper research into ones appeal . . . if it's not one thing its another with the prison's policies and proceedures [sic]. From being transferred at any moment, to a humanitarian crisis like Covid-19, to incidents that cause cancelations and shutdowns of everything from law library time, education, self help programs, etc., etc.

ECF No. 63 at 1. Canela also notes one example in May 2022 where "there was an incident that placed [Petitioner and others] on lockdown . . . [w]hich . . . prevented Petitioner from conducting any legal research" for roughly two weeks. *Id.* at 1–2.

To establish that prison conditions constitute extraordinary circumstances sufficient to support a finding of equitable tolling, there must have been "extraordinary circumstances beyond a prisoner's control [that made] it *impossible* to file a petition on time and the extraordinary circumstances [must have been] the *cause* of [the prisoner's] untimeliness." *Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012) (quoting *Bills*, 628 F.3d at 1097) (emphasis in original). Petitioner must also "demonstrate with . . . specificity a connection between the alleged denial of access and his untimely petition." *Quintero v. Haws*, No. 07-CV-0579-H (POR), 2008 WL 553651, at *5 (S.D. Cal. Feb. 28, 2008) (finding that "bare assertions that restricted access to the law library, job demands, and lockdowns amounted to a denial of court access are insufficient to establish the applicability of equitable tolling").

Here, Petitioner only makes generalized claims about prison conditions such as "difficult" legal research access, broad prison "policies and procedures," and prison transfer complications. ECF No. 63 at 1. Canela's one specific example involves an incident in May 2022, but that is not particularly relevant to this analysis because it occurred far beyond the July 2019 AEDPA statute of limitations expiration.

Because the Court finds there were no extraordinary circumstances in this case, the Court need not assess whether Petitioner diligently pursued his claim. Therefore, although it may have been more difficult for Petitioner to conduct research while incarcerated, none of his claims are sufficiently specific to indicate that the conditions made it *impossible* for him to file his petition within the proper timeframe. Consequently, Petitioner has not met the high burden necessary to establish extraordinary circumstances for equitable tolling.

In conclusion, only Petitioner's *Faretta*-based claim regarding his right to self-representation was timely. Canela's claims regarding ineffective assistance of counsel and prosecutorial misconduct were not timely because Petitioner did not file them within the AEDPA statute of limitations period, and they are not subject to either statutory or equitable tolling.

### 2. Petitioner's new claims do not relate back to his properly filed claim.

Canela constructively alleges that his ineffective assistance of counsel and prosecutorial misconduct claims relate back to his right to self-representation claim. Petitioner argues that "had Petitioner's *Faretta* rights . . . to represent oneself not been terminated, Petitioner would have presented to the trial court and jury all relevant information and facts brought before the present court." ECF No. 63 at 2. He also contends there was "information that was being withheld by the prosecution, violating" Petitioner's *Brady* rights. *Id.*

A claim "relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or

attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also* 28 U.S.C. § 2242 ("Application[s] for a writ of habeas corpus . . . may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). A relation back doctrine analysis involves the following two-party inquiry:

> First, we determine what claims the amended petition alleges and what core facts underlie those claims. Second, for each claim in the amended petition, we look to the body of the original petition and its exhibits to see whether the original petition "set out" or "attempted to . . . set out" a corresponding factual episode, *see* Fed. R. Civ. P. 15(c)(1)(B)—or whether the claim is instead "supported by facts that differ in both time and type from those the original pleading set forth," *Mayle*, 545 U.S. 644, 664 (2005).

*Ross v. Williams*, 950 F.3d 1160, 1167 (9th Cir. 2020). Thus, the Court will first look to the facts underlying Petitioner's ineffective assistance of counsel and prosecutorial misconduct claims. Second, the Court will assess them in relation to the timely *Faretta* claim.

Canela's ineffective assistance of counsel claim involves the conduct of Petitioner's trial counsel. Petitioner contends that his trial counsel failed to "conduct a reasonable investigation [and] hire experts, refuse[d] to call on witnesses, [did] not properly object[] to unwarranted presentation of evidence and charges," and "refused to present corroborating evidence and facts." ECF No. 57 at 6. To succeed on an ineffective assistance of counsel claim, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Canela's prosecutorial misconduct allegations involve the prosecutor's conduct. Petitioner contends that the prosecutor withheld alcohol analysis evidence, knowingly used perjured testimony, tampered with evidence, and placed unfounded burdens on Petitioner. ECF No. 57 at 6. To succeed on a *Brady* claim, Petitioner must show that (1) the evidence at issue is favorable to the accused because it is exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) prejudice ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

Now turning to Petitioner's timely *Faretta* claim, Canela's argument involves the trial court's view of Petitioner's own conduct within the context of the Court's decision to revoke Petitioner's *pro per* status. *See* ECF No. 1. Canela contends that

> his convictions should be reversed because he was erroneously denied his fundamental constitutional right to self-representation when the trial court abused its discretion and revoked petitioner's pro per status just prior to the start of trial without a specific and adequate warning, without consideration of alternative sanctions, without sufficient showing that petitioner was disruptive or dilatory in a manner that threatened to subvert the core concept of a trial or to compromise the court's ability to conduct a fair trial, and without making an adequate record as to how appellant's [sic] misconduct would seriously threaten the core integrity of the trial.

*Id.* at 9. To succeed on his right to self-representation claim, Petitioner must show that the trial court erred in its finding that he had engaged in "serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46; ECF No. 14-45 at 38–43. This requires an inquiry into what the trial court knew about Petitioner's conduct while he proceeded *pro per*. Here, the trial court's decision largely rested upon Petitioner's persistent discovery requests for information the court found mostly "irrelevant" to the case. ECF No. 14-45 at 40.

Comparing the underlying facts of the three claims, the ineffective assistance of counsel and prosecutorial misconduct claims differ in both time and type from Petitioner's *Faretta* self-representation claim. They do not share operative facts and require a different showing from the Petitioner. The ineffective assistance of counsel claim hinges upon the defense attorney's alleged performance deficiency, the prosecutorial misconduct claim hinges upon whether the prosecution caused prejudice by failing to turn over favorable evidence, and his *Faretta* claim involves his conduct in front of the judge. The operative facts differ and therefore the claims do not relate back. *See McGrail v. Gamboa*, No. CV 18-3642 JVS (PVC), 2022 WL 1511778, at *8 (C.D. Cal. Mar. 29, 2022) (finding that the *Marsden*/*Faretta* claim and prosecutorial misconduct claims do not relate back to a timely ineffective assistance of counsel claim

because they "clearly assert new grounds for relief supported by facts that differ in both time and type from those set forth in the original petition"). Consequently, Petitioner's unexhausted ineffective assistance of counsel and prosecutorial misconduct claims do not relate back to the exhausted *Faretta* claim. He therefore does not qualify for a *Kelly* stay.

In conclusion, Canela's only timely claim is his *Faretta* claim. Canela exhausted the *Faretta* claim in state court and filed it in this Court before the July 11, 2019 AEDPA deadline. His additional ineffective assistance of counsel and prosecutorial misconduct claims remain unexhausted and do not warrant a *Kelly* stay because the two additional claims were not timely and do not relate back to the exhausted *Faretta* claim.

## CONCLUSION

For the above reasons, the Court **DENIES** Petitioner's Motion for Extension of Time to File an Objection to the Report; **ADOPTS** the Magistrate Judge's Report and Recommendation in full; and **DENIES** Petitioner's Motion for Stay and Abeyance.

Petitioner filed the present Motion for Stay and Abeyance one day before the operative traverse deadline. The Court will therefore provide Petitioner with 28 days, or until **April 18, 2023**, to file his traverse. If Petitioner does not file a traverse by that date, this Court will make a habeas determination based upon the information already provided.

**IT IS SO ORDERED.**

Dated: March 21, 2023

Hon. Gonzalo P. Curiel
United States District Judge